United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARCICIO MORA and REMEDIOS MORA, | Case No. 11-6598 SC |
| Plaintiffs, | ORDER GRANTING DEFENDANTS' MOTION TO DISMISS CORRECTED FIRST AMENDED COMPLAINT |
| v. | |
| U.S. BANK N.A., as Trustee for the holders of the First Franklin Mortgage Loan Trust Mortgage Pass-Through Certificates, Series 2005-FF9, SELECT PORTFOLIO SERVICING, INC., NATIONAL DEFAULT SERVICING CORPORATION, and DOES 1 THROUGH 20, | |
| Defendants. | |

I.   **INTRODUCTION**

Plaintiffs Tarcicio and Remedios Mora (collectively, "Plaintiffs") seek postponement of the pending non-judicial foreclosure sale of their home at 1264 San Rafael Drive in Petaluma, California (the "Property"), as well as compensatory damages of $65,000.  ECF No. 17 (Corrected First Amended Complaint ("CFAC")) at 14.  Their lawsuit names three Defendants: U.S. Bank N.A. ("USB"), who allegedly is the beneficiary of the deed of trust on the Property; Select Portfolio Servicing, Inc. ("SPS"), who allegedly is the mortgage servicer; and National Default Servicing

**United States District Court**
For the Northern District of California

1  Corporation ("NDSC"), who allegedly is the foreclosure trustee and

2  agent for USB (collectively, "Defendants"); as well as twenty

3  unnamed "Does."  CFAC ¶¶ 2-5.[1]

4       The CFAC asserts four claims: (1) against all Defendants,

5  violation of California Civil Code Section 2923.5 ("Section

6  2923.5"); (2) against USB and SPS, violation of California's Unfair

7  Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL"); (3)

8  against SPS, breach of contract; and (4) against all defendants,

9  promissory estoppel.  Defendants move to dismiss the CFAC in its

10 entirety.  ECF No. 24 ("Mot.").[2]  The Motion is fully briefed, and

11 suitable for determination without oral argument.  ECF Nos. 26

12 ("Opp'n"), 28 ("Reply").  For the reasons set forth below, the

13 Court GRANTS Defendants' Motion and dismisses the CFAC.

14

15 **II.   BACKGROUND**

16      For purposes of this Rule 12(b)(6) motion, the Court takes all

17 the well-pleaded allegations of the CFAC as true and construes them

18 in the light most favorable to Plaintiffs.  Lee v. City of Los

19 Angeles, 250 F.3d 668, 679 (9th Cir. 2001).  On June 29, 2005,

20 _____

[1] Plaintiffs originally filed this case in California state court.
Thereafter, Defendants removed to federal court on the basis of
diversity.  Following a series of motions, as well as amendments
and corrections of Plaintiffs' pleading, this Court retained
jurisdiction and determined that the CFAC is the operative
complaint in this case.  See ECF No. 23.

[2] Concurrently with their Motion to Dismiss, Defendants filed a
Request for Judicial Notice of several documents.  ECF Nos. 25
("RJN") Exs. 1 (Deed of Trust ("DOT")), 2 (Assignment of Deed of
Trust, recorded December 14, 2010 ("Dec. 14 Ass.")), 3 (Notice of
Default ("NOD")), 4 (Notice of Substitution of Trustee ("Not. Sub.
T.")), and 5 (Notice of Trustee's Sale ("Not. T. Sale")).  None of
these documents were attached to the CFAC.  Nevertheless, the Court
takes judicial notice of them because the CFAC depends on their
contents and neither party disputes their authenticity.  Knievel v.
ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005).

United States District Court
For the Northern District of California

1  Plaintiffs took out a $400,000 adjustable rate mortgage loan,

2  repayment of which was secured by a Deed of Trust recorded against

3  the Property. CFAC ¶ 17; DOT. The Property was and is Plaintiffs'

4  residence. CFAC ¶ 40; see DOT at 9 (paragraph captioned

5  "Occupancy"). On December 14, 2010, an assignment of the Deed of

6  Trust was recorded in Sonoma County, naming USB as its beneficiary.

7  CFAC ¶ 18; Dec. 14 Ass. Plaintiffs allege that, on October 24,

8  2011, another assignment of the Deed of Trust was recorded. CFAC ¶

9  19.[3] Plaintiffs further allege that their loan was pooled into a

10 mortgage-backed security called the First Franklin Mortgage Loan

11 Trust Mortgage Pass-Through Certificates, Series 2005-FF9. Id. ¶

12 20. Plaintiff identifies USB as the trustee. Id. ¶ 21. Plaintiff

13 does not identify the date on which the trust pool allegedly was

14 created. See id. ¶ 20.

15     Since at least June 2009, SPS has acted as USB's servicing

16 agent for the loan. Id. ¶¶ 24-25, 76, 85. Plaintiffs allege that

17 SPS "has continuously represented to Plaintiffs that they will

18 obtain a loan modification." Id. ¶ 59. But, Plaintiffs allege,

19 SPS has repeatedly denied Plaintiffs' applications for a loan

20 modification while asking Plaintiffs "to 'apply again.'" Id.

21 (quotation in original). The Court construes these allegations to

22 refer to permanent loan modification, as opposed to temporary.

23 That is because Plaintiffs go on to allege that, in June 2006, SPS

24 put them on a "Trial Period Payment Plan," under which Plaintiffs

25 would make monthly payments of $1,500.00. Id. ¶¶ 27, 76.

26 Plaintiffs allege that SPS told them "that the Trial Period would

27

28 [3] Plaintiffs do not allege how this assignment changed the previous one.

3

United States District Court
For the Northern District of California

1   lead to a permanent modification on their loan." Id. ¶ 27.

2   Plaintiffs allege in conclusory fashion that in reliance on SPS's

3   promise to permanently modify the loan they performed all their

4   obligations during the Trial Period, including making their $1,500

5   monthly payments. Id. ¶¶ 27, 77.

6        On December 14, 2010, NDSC recorded a Notice of Default which

7   indicated that Plaintiffs were $54,956.30 past due on their loan.

8   Id. ¶¶ 28, 42, 88; NOD. The Notice of Default states: "This loan

9   is exempt. Compliance with California Civil Code § 2923.5 and

10  2924.8 is not necessary to proceed with preparing and processing a

11  notice of default. " NOD at 2; see also CFAC ¶ 29.

12  Notwithstanding the purported exemption from Section 2923.5

13  appearing on the face of the Notice of Default, Plaintiffs allege

14  that Defendants violated the statute by failing to contact, or

15  attempt to contact, Plaintiffs prior to filing the NOD or

16  commencing foreclosure proceedings," in violation of Section

17  2923.5. CFAC ¶¶ 31-32, 46, 52.[4]

18       On November 7, 2011, two documents pertaining to the Property

19  were recorded in Sonoma County, California. The first was a

20  Substitution of Trustee in favor of NDSC. The second was a Notice

21  of Trustee's Sale scheduling the foreclosure sale of the Property

22  for November 30, 2011. See Not. Sub. T., Not. T. Sale. It appears

23  that the foreclosure sale has not yet occurred. See CFAC at 14

24  (Plaintiffs praying for postponement of sale); MTD at 2 (Defendants

25  seeming to acknowledge that sale has not yet "go[ne] forward").

26  ///

27
28  [4] The Court later addresses the apparent contradiction between
    these allegations and others which describe extensive contact
    between Defendants and Plaintiffs. See infra Section IV.A.

**United States District Court**
For the Northern District of California

III. **LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). The allegations made in a complaint must be both "sufficiently detailed to give fair notice to the opposing party of the nature of the claim so that the party may effectively defend against it" and "sufficiently plausible" such that "it is not unfair to require the opposing party to be subjected to the expense of discovery." Starr v. Baca, 633 F.3d 1191, 1204 (9th Cir. 2011).

IV. **DISCUSSION**

A. **Claim One (Section 2923.5)**

California's Civil Code provides a comprehensive framework for non-judicial foreclosure. First, the lender must record a notice of default. Then, after three months have elapsed, the lender must

give notice of the planned foreclosure sale.  Cal. Civ. Code §
2924.  Section 2923.5 concerns the notice of default.  It requires
the "mortgagee, trustee, beneficiary, or authorized agent" seeking
to file a notice of default to first contact the borrower in person
or by telephone "in order to assess the borrower's financial
situation and explore options for the borrower to avoid
foreclosure."  Cal. Civ. Code § 2923.5(a)(2).  The notice of
default may not be filed until thirty days after this initial
contact or the statute's due diligence requirements are satisfied.
Id. § 2923.5(a)(1).  During this initial contact, the party seeking
to file a notice of default must advise the borrower that he or she
has the right to request a subsequent meeting and, if requested,
schedule the meeting within fourteen days.  Id. § 2923.5(a)(2).

     The rights provided to borrowers under Section 2923.5 are
solely procedural in nature; the statute does not provide a
substantive right to a loan modification.  See Mabry v. Super. Ct.,
185 Cal. App. 4th 208, 231-32 (Cal. Ct. App. 2010).  Nor does the
statute obligate the lender "to become a loan counselor itself."
Id. at 219.  The lender's obligations under Section 2923.5 to
"assess" the borrower's financial situation and "explore" options
to avoid foreclosure can be satisfied by simply asking the borrower
"why can't you make your payments?" and "telling the borrower the
traditional ways that foreclosure can be avoided (e.g., deeds 'in
lieu,' workouts, or short sales)."  Id. at 232.

     Ortiz v. Accredited Home Lenders, Inc., 639 F. Supp. 2d 1159
(S.D. Cal. 2009), demonstrates the limited scope of a lender's duty
under Section 2923.5.  In that case, plaintiff borrowers alleged
that their lender had "failed and refused to explore" alternatives

1  to foreclosure with them.  Id. at 1166.  Plaintiffs did not

2  specifically allege that the borrower had failed to contact them,

3  and the borrower had filed a declaration of compliance with Section

4  2923.5 along with the notice of trustee sale.  Id.  The district

5  court found that plaintiffs failed to state a Section 2923.5 claim

6  because the declaration of compliance, in conjunction with the

7  allegation that the lender "refused to explore" loan modification,

8  implied that the borrowers "were contacted as required by the

9  statute." Id.

10       This case is similar to Ortiz.  Plaintiffs allege that "SPS,

11  on many occasions and for a long period of time, has misrepresented

12  and misled Plaintiffs to believe that they will provide Plaintiffs

13  with a loan modification to help them keep their home." CFAC ¶ 25.

14  Plaintiffs allegedly responded to requests for documents initiated

15  by SPS.  See id. ¶ 26.  Plaintiffs even acknowledge that SPS placed

16  Plaintiffs "on a Trial Period Payment Plan" -- that is, SPS gave

17  them a temporary loan modification, in effect if not in name.  Id.

18  ¶ 27; see also id. ¶¶ 59, 76, 86.  This trial period began in June

19  2009 and the Notice of Default was recorded roughly eighteen months

20  later -- well after the thirty-day period required by Section

21  2923.5.  Id. ¶ 76; NOD.  Essentially, Plaintiffs' allegations

22  amount to a concession that they received all the "assess[ment]"

23  and "explor[ation]" required by Section 2923.5.

24       The Court notes that the CFAC also contains boilerplate

25  assertions that Defendants "neither contacted, or attempted to

26  contact Plaintiffs," id. ¶ 46, and that Defendants "failed to

27  contact Plaintiffs . . . ," id. ¶ 52.  See also id. ¶¶ 31-32

28  (same).  The Court does not take these allegations as true because

they are merely legal conclusions couched as factual allegations.
<u>Iqbal</u>, 556 U.S. at 678; <u>see also id.</u> at 679 (when ruling on motions
to dismiss, district courts may "begin by identifying pleadings
that, because they are no more than conclusions, are not entitled
to the assumption of truth").  The Court determines that
Plaintiffs' blanket denials of contact from Defendants are nothing
more than "formulaic recitation[s] of the elements of a cause of
action" -- in this case, a Section 2923.5 claim.  <u>Id.</u> at 678.
Specifically, paragraphs 31 and 32 of the CFAC state:

> At no time did the mortgagee, trustee, beneficiary, or
> authorized agent contact Plaintiff [sic], in person or by
> telephone, to assess the borrowers' financial situation
> and explore options to avoid foreclosure as mandated by
> California Civil Code section 2923.5.  At no time did the
> mortgagee, trustee, beneficiary, or authorized agent
> attempted [sic] to contact Plaintiff [sic] in accordance
> with the due diligence requirements of California Civil
> Code section 2923.5.

These paragraphs merely recite the language of Section 2923.5.[5]
Plaintiffs' other blanket denials are similar.  Paragraph 46
states:

> Contrary to the requirements of Cal. Civ. Code § 2923.5,
> Defendants USB, SPS and NDSC, as an agent for USB and
> SPS, neither contacted, or [sic] attempted to contact
> Plaintiffs prior to filing the NOD or commencing
> foreclosure proceedings, and as such the non judicial
> [sic] foreclosure in [sic] not being conducted in
> accordance with of [sic] Cal. Civ. Code § 2924.

Paragraph 52 states:

> Defendants USB, SPS and NDSC, as an agent for USB and
> SPS, failed to contact Plaintiff [sic] to satisfy the
> detailed requirements of Cal. Civ. Code § 2923.5(a)(2),
> or the due diligence requirements of Cal. Civ. Code §
> 2923.5(g), and did not adhere to the mandates laid out by
> the legislature before commencing a non-judicial

---

[5] "A mortgagee, beneficiary, or authorized agent shall contact the
borrower in person or by telephone in order to assess the
borrower's financial situation and explore options for the borrower
to avoid foreclosure."  Cal. Civ. Code § 2923.5(a)(2).

**United States District Court**
For the Northern District of California

1      foreclosure. Accordingly[,] they are precluded from
2  proceeding with non-judicial foreclosure pursuant [to] Cal. Civ. Code § 2924 until the requisite contact is made with Plaintiffs.

3      If the Court were to take these paragraphs as factual

4  allegations, it would have to wrestle with the contradiction

5  between, on the one hand, Plaintiffs' denial of "the requisite

6  contact" from Defendants within the portion of the pleading devoted

7  to the Section 2923.5 claim and, on the other hand, their frequent

8  acknowledgement of contact elsewhere, including in their opposition

9  brief. Opp'n at 9, 11. Indeed, Plaintiffs rely on the existence

10 of numerous conversations between themselves and SPS for their

11 breach of contract and promissory estoppel claims, which center on

12 Defendants' alleged failure to make good on promises to give

13 Plaintiffs a permanent loan modification. See infra Section IV.C.

14 Even resolving all reasonable doubts in favor of Plaintiffs, the

15 inescapable conclusion is that Plaintiffs' blanket denials of

16 having been contacted by Defendants exist simply to state the

17 elements of a Section 2923.5 claim, and are the sort of "naked

18 assertions" that do not satisfy Rule 8's pleading requirements.

19 See Iqbal, 556 U.S. at 678. The Court therefore takes only the

20 more specific allegations set forth in the CFAC as well-pleaded

21 factual allegations entitled to the presumption of truth. The more

22 general "allegations" are conclusions of law couched as facts.

23     Once shorn of Plaintiffs' legal conclusions, the CFAC's

24 allegations amount to an admission that Defendants complied with

25 Section 2923.5. Plaintiffs' Section 2923.5 claim therefore fails.

26 Moreover, the Court determines that additional amendment could not

27 save the claim. Plaintiffs already have alleged in adequately

28 clear fashion that they have received all the process to which

**United States District Court**
For the Northern District of California

1  Section 2923.5 entitles them.  Accordingly, the Court DISMISSES

2  Plaintiffs' Section 2923.5 claim WITH PREJUDICE.[6]

3      **B.    Claim Two (Cal. Bus. & Prof. Code § 17200 ("UCL"))**

4      The UCL "establishes three varieties of unfair competition --

5  acts or practices which are [1] unlawful, or [2] unfair, or [3]

6  fraudulent."  <u>Bernardo v. Planned Parenthood Fed'n of Am.</u>, 115 Cal.

7  App. 4th 322, 351 (2004).  The Court concludes that Plaintiffs have

8  not alleged the facts supporting their UCL claim with enough

9  specificity to put Defendants on notice of the bases of the claim.

10 Neither have Plaintiffs consistently represented the legal theories

11 under which they intend to proceed.

12     The CFAC is no model of clarity, but Plaintiffs appear to

13 bring their UCL claim under only the UCL's "unfair" and

14 "fraudulent" prongs, not the "unlawful" prong.  CFAC ¶ 58; <u>but</u> <u>see</u>

15 <u>id.</u> ¶ 72 (cursory mention of "unlawful" acts).  Plaintiffs' only

16 specific allegation pertaining to the UCL is paragraph 59:

17         SPS has continuously misrepresented to Plaintiffs that
           they will obtain a loan modification.  And yet [SPS]
18         repeatedly has denied him [sic] for the same[,] not
           providing reasons for the rejection but rather continuing
19         the deceit by further misleading Plaintiffs asking to
           "apply again" [sic] with no real good faith intention of
20         helping Plaintiffs save their home and avoid foreclosure.

21 Leaving aside that this paragraph misstates the scope of

22 ──────────────────
   [6] Though the Court rules in Defendants' favor on this claim, one of
23 their arguments bears further discussion because it borders on the
   frivolous.  <u>See</u> Fed. R. Civ. P. 11(b)(2).  Defendants urge
24 dismissal of Plaintiffs' Section 2923.5 claim on the novel theory
   that, because the Notice of Default says Plaintiffs' loan was
25 "exempt" from compliance with Section 2923.5 (as well as Civil Code
   Section 2924.8), Plaintiffs bear the burden of showing the loan is
26 <u>not</u> exempt.  <u>See</u> MTD at 7-8.  Defendants cite no authority for this
   remarkable proposition, i.e., that a loan is presumptively exempt
27 from California's statutory foreclosure procedures whenever the
   foreclosing party says it is.  Nor do Defendants address the
28 obvious issue that they, not Plaintiffs, bear the burden of
   persuasion in connection with the instant motion.

**United States District Court**
For the Northern District of California

1   Defendants' obligation to Plaintiffs, which falls significantly

2   short of a duty to "help[] Plaintiffs save their home," <u>see</u> <u>supra</u>

3   Section IV.A, Plaintiffs fail to allege when or where SPS's

4   promises to Plaintiffs took place, specifically what SPS promised,

5   or how these promises constituted "deceit."   Neither do Plaintiffs

6   explain, beyond offering mere "labels and conclusions," <u>Iqbal</u>, 556

7   U.S. at 678, how denying Plaintiffs' application for a loan

8   modification was "unfair," as that term is used in UCL

9   jurisprudence.  <u>See</u>, <u>e.g.</u>, <u>Cel-Tech Communications, Inc. v. Los</u>

10  <u>Angeles Cellular Tel. Co.</u>, 20 Cal. 4th 163, 186-87 (1999); <u>Scripps</u>

11  <u>Clinic v. Superior Court</u>, 108 Cal. App. 4th 917, 939-40 (2003).

12  Neither do Plaintiffs provide any specific facts supporting their

13  blanket assertion that they were injured or lost money or property

14  as a result of the alleged unfair or fraudulent practices.  <u>See</u>

15  <u>Clayworth v. Pfizer, Inc.</u>, 49 Cal. 4th 758, 788 (2010).

16       Challenged on these points by Defendants, Plaintiffs provide

17  no meaningful response.  They merely point to generalized

18  allegations of "multiple violations" of the UCL.  Opp'n at 9

19  (citing CFAC ¶¶ 64-67).  This will not do.  <u>See</u> <u>Iqbal</u>, 556 U.S. at

20  678 (Rule 8 "demands more than an unadorned, the-defendant-

21  unlawfully-harmed-me accusation").  Plaintiffs' opposition brief

22  not only fails to clear up any ambiguities in the CFAC, it

23  introduces a new one by addressing UCL unlawfulness when the CFAC

24  appears to proceed on unfairness and misrepresentation theories.

25  <u>Compare</u> CFAC ¶ 58 <u>with</u> Opp'n at 9.  This leaves open the question

26  of which legal theories Plaintiffs actually intend to invoke.

27  Finally, as regards standing, Plaintiffs merely gesture in the

28  general direction of the CFAC and say "it is clear" that Plaintiffs

1  have satisfied the standing requirements for private UCL

2  plaintiffs.  Opp'n at 9.

3      Plaintiffs have not approached the minimum requirements for

4  pleading a UCL claim, or even consistently identified what type of

5  UCL claim they assert.  Accordingly, the Court DISMISSES

6  Plaintiffs' UCL claim.  Because the Court cannot determine at this

7  juncture that amendment would be futile, the Court grants

8  Plaintiffs LEAVE TO AMEND this claim.  Any amended pleading shall

9  be consistent with the guidance in this Order.  Additionally, given

10 Plaintiffs' previous amendments, any future requests for leave to

11 amend shall be disfavored.

12     C.    **Claims Three and Four (Breach of Contract and Promissory**

13           **Estoppel)**

14     "To state a cause of action for breach of contract, a party

15 must plead the existence of a contract, his or her performance of

16 the contract or excuse for nonperformance, the defendant's breach

17 and resulting damage."  Harris v. Rudin, Richman & Appel, 74 Cal.

18 App. 4th 299, 307 (1999).  Additionally, if the alleged contract

19 has been reduced to writing, "the terms must be set out verbatim in

20 the body of the complaint or a copy of the written agreement must

21 be attached and incorporated by reference."  Id.

22     Here, Plaintiffs assert the legal conclusion that they formed

23 a contract with SPS, but they do not allege: the basics of contract

24 formation; what the terms of the contract were; or under what

25 circumstances SPS allegedly breached the contract.  Plaintiffs do

26 not even say whether the alleged contract was oral or written.

27 Additionally, Plaintiffs seek specific performance of the contract

28 but do not allege, among other things, sufficiently definite terms

**United States District Court**
For the Northern District of California

1   that would allow the Court to determine whether the requested

2   performance is substantially similar to that required under the

3   contract.  See Union Oil Co. of California v. Greka Energy Corp.,

4   165 Cal. App. 4th 129, 134 (2008).  Neither do they explain how the

5   legal remedy they seek -- postponement of the foreclosure sale

6   pursuant to Section 2923.5 -- would be inadequate.  See id.  In

7   short, Plaintiffs have not pled enough facts for the Court to

8   determine what the contract allegedly was or to state a plausible

9   claim to the type of relief they seek.[7]

10      Plaintiffs argue that they may satisfy Rule 8 simply by

11  pleading the "legal effect" of the contract.  Opp'n at 9 (citing

12  Constr. Protective Services, Inc. v. TIG Specialty Ins. Co., 29

13  Cal. 4th 189, 198-99 (2002)).  Not so.  "While legal conclusions

14  can provide the framework of a complaint, they must be supported by

15  factual allegations."  Iqbal, 556 U.S. at 679.  Plaintiffs'

16  citation to a California state case elaborating a pleading standard

17  applicable in a California state court is inapposite in the context

18  of the instant motion, which is governed by the Federal Rules and

19  Iqbal.

20      Plaintiffs' promissory estoppel claim fails for the same

21  reason as the contract claim.  Plaintiffs are required to set forth

22  plausible allegations of "(1) a clear promise, (2) reliance, (3)

23  substantial detriment, and (4) damages measured by the extent of

---

24  [7] Defendants argue that, "to whatever extent they are attempting to
25  do so, Plaintiffs cannot premise their breach of contract claim on
    an alleged failure to give Plaintiffs a Home Affordable
26  Modification Program ('HAMP') modification" because HAMP provides
    no private right of action.  MTD at 5.  Defendants are correct.
27  See Cleveland v. Aurora Loan Servs., LLC, C 11-0773 PJH, 2011 WL
    2020565, at *4 (N.D. Cal. May 24, 2011) (collecting authorities).
28  However, Plaintiffs specifically deny basing their breach of
    contract claim on HAMP.  Opp'n at 10.

**United States District Court**
For the Northern District of California

the obligation assumed and not performed." <u>Poway Royal Mobilehome</u>
<u>Owners Ass'n v. City of Poway</u>, 149 Cal. App. 4th 1460, 1471 (2007)
(internal quotation marks omitted).  Plaintiffs' claim falters at
the first prong.  Plaintiffs allege, variously, that SPS (as well
as unnamed Does): "made a promise that Plaintiffs would be approved
for a loan modification on or about June 2009," CFAC ¶ 85;
"promised Plaintiffs would receive a permanent modification of the
account after the third Trial Period payment was made," <u>id.</u> ¶ 86;
and/or asked Plaintiffs to make monthly payments of $1,500 and
represented that making these payments "would lead to a permanent
modification on their loan," <u>id.</u> ¶¶ 27, 76.  While the allegations
are reasonably clear about SPS requiring Plaintiffs to make three
trial payments, they are unclear about what would follow these
payments: did SPS promise to agree to a permanent loan
modification, or merely to review Plaintiffs' application for one?[8]
Plaintiffs' briefing does not clarify the matter.  <u>See</u> Opp'n at 9
("Under term [sic] of the agreement, . . . Plaintiffs would be
reviewed for and receive a permenant [sic] loan modification.").
In addition to failing to illuminate the terms of the alleged
promise, Plaintiffs fail to identify who made it ("SPS and Does 1-
20") or when ("on or about June 2009").  Plaintiff has made no more
than "conclusory allegations about an unspecified individual
agreeing to a loan modification with unspecified terms at some
point in the unspecified future . . . ." <u>Melegrito v. CitiMortgage</u>
<u>Inc.</u>, C 11-01765 LB, 2011 WL 2197534, at *13 (N.D. Cal. June 6,

---

[8] The Court notes that the former promise would be unenforceable
under California law.  <u>See Copeland v. Baskin Robbins U.S.A.</u>, 96
Cal. App. 4th 1251, 1257-58 (Cal. Ct. App. 2002) ("agreements to
agree," unlike agreements to negotiate, are unenforceable).

**United States District Court**
For the Northern District of California

1   2011).  These cannot sustain a promissory estoppel claim.  <u>Id.</u>

2   Accordingly, the Court DISMISSES Plaintiffs' promissory

3   estoppel claim, as well as the breach of contract claim discussed

4   above.  As with Plaintiffs' UCL claim, the Court is unable to

5   determine at this time that further amendment would be futile, and

6   therefore grants Plaintiffs LEAVE TO AMEND Claims Three and Four in

7   a manner consistent with the guidance in this Order.[9]  Further

8   requests for leave to amend will be disfavored.

9   **D.   <u>Final Matters</u>**

10  Because Plaintiffs have the Court's leave to amend their

11  complaint, in the interest of judicial economy and narrowing the

12  issues for trial, the Court will provide further guidance in

13  connection with arguments that the parties have repeatedly raised.

14  1.   <u>Tender</u>

15  Defendants challenge Plaintiffs' right to a postponement of

16  the foreclosure sale on the ground that Plaintiffs have not offered

17  to tender the amount in default.  MTD at 11.  Defendants concede

18  that stating a claim under Section 2923.5 would permit Plaintiffs

19  to seek postponement without tender, because Plaintiffs would be

20  seeking postponement as a statutory (i.e., legal) remedy rather

21  than an equitable one.  <u>See</u> <u>id.</u>  Having found that Plaintiffs do

22  not and cannot state a Section 2923.5 claim, <u>supra</u> Section IV.A,

23  the Court determines that to continue to seek postponement of the

24  foreclosure sale Plaintiffs must satisfy California's tender rule

25

26  [9] Plaintiffs assert their promissory estoppel claim against all
    three Defendants, but the allegations relate only to SPS and the
27  aforementioned Does.  Any further amendment of this claim must
    contain clear allegations that support a plausible claim against
28  USB (as well as NDSC, <u>see</u> <u>infra</u> Section IV.D.2) or this claim will
    be dismissed against USB and NDSC WITH PREJUDICE.

United States District Court
For the Northern District of California

1    or show that this case fits into an exception from the tender rule.

2    Plaintiffs argue that the tender rule does not apply in this case

3    because "Plaintiffs both attack the validity of the debt and assert

4    counterclaims and set-offs."  Opp'n at 6.  "In fact," Plaintiffs

5    explain, "Plaintiffs are not challenging irregularities in the

6    foreclosure proceeding.  Rather, they argue that Defendants did not

7    comply with [C]ivil Code section 2923.5 and the underlying debt

8    occurred as a result of fraud, misrepresentations, false promises

9    and deceit."  Id.

10        Because the Court dismisses Plaintiffs' Section 2923.5 claim,

11   it passes over Plaintiffs' assertion that that claim somehow did

12   not "challeng[e] irregularities in the foreclosure proceeding."

13   But Plaintiffs' argument still troubles the Court.  Plaintiffs

14   describe themselves as challenging the "underlying debt," but the

15   "fraud, misrepresentations, false promises and deceit" alleged in

16   the CFAC do not relate to the underlying debt; they pertain to

17   SPS's alleged promise to provide Plaintiffs with a permanent loan

18   modification.  The CFAC does not appear to challenge the underlying

19   debt in any fashion.  Neither does it allege (or even fairly

20   suggest the existence of) "counterclaims and set-offs."  If

21   Plaintiffs continue to seek postponement of the foreclosure sale,

22   their amended complaint must: offer to tender; contain allegations

23   attacking the underlying debt; or provide some other colorable

24   reason to exempt Plaintiffs from the tender rule.

25            2.   Claims Against NDSC

26        Defendants seek dismissal of Claims 1, 2, and 4 with respect

27   to NDSC.  MTD at 12.  Defendants argue that Plaintiffs have pled no

28   facts that could subject NDSC to liability, given that California

law shields foreclosure trustees from liability for certain good faith errors. Id. (citing Cal. Civ. Code § 2924(b); Pro Value Props., Inc. v. Quality Loan Serv. Corp., 170 Cal. App. 4th 579, 583 (Cal. Ct. App. 2009)). As Defendants point out, Plaintiffs entirely fail to respond to this argument. Reply at 11. Accordingly, the Court DISMISSES all claims against NDSC without prejudice. Plaintiffs may, consistent with Rule 11, amend their complaint to state viable claims against NDSC. If they do not do so within thirty (30) days, the Court will deem Plaintiffs' claims against NDSC dismissed with prejudice. As discussed earlier, additional requests for leave to amend shall be disfavored.

## V.   CONCLUSION

    For the foregoing reasons, the Court GRANTS Defendants' Motion to Dismiss the CFAC. The Court dismisses Claim One (the Section 2923.5 claim) WITH PREJUDICE. The Court dismisses the remaining claims WITHOUT PREJUDICE. Plaintiffs may amend their complaint consistent with the guidance in this Order. If Plaintiffs do not file an amended complaint within thirty (30) days of the signature date of this Order, the Court will dismiss this case against all Defendants with prejudice. Given the procedural history of this case, additional requests for leave to amend are disfavored.


    IT IS SO ORDERED.


    Dated: June 7, 2012

UNITED STATES DISTRICT JUDGE